■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSE A. MASCHIO, Appellant. [986 NYS2d 252]—

Garry, J. Appeal from a judgment of the County Court of Montgomery County (Catena, J.), rendered September 1, 2010, upon a verdict convicting defendant of the crimes of criminal possession of a weapon in the second degree (two counts), criminal possession of a weapon in the third degree and reckless endangerment in the second degree.

In November 2009, two cars drove back and forth in front of a tavern in the City of Amsterdam, Montgomery County, while a person or persons therein fired multiple shots at the tavern and people standing outside. Witnesses reported that some of the shots were fired by a person wearing a distinctive yellow hat; defendant, who had been in the tavern wearing a yellow hat earlier that evening, was apprehended after the shooting, wearing a yellow hat and riding with codefendant Michael Bianca in a car that matched the description of one of the involved vehicles. Defendant and Bianca were thereafter indicted for various crimes. Following a joint jury trial, defendant was convicted of criminal possession of a weapon in the

second degree (two counts), criminal possession of a weapon in the third degree and reckless endangerment in the second degree.* Defendant was sentenced to an aggregate prison term of 12 years. He appeals, and we affirm.

We reject defendant's claim that the admission at trial of a statement given to police by Bianca violated defendant's right to confront witnesses and deprived him of a fair trial (*see generally Crawford v Washington*, 541 US 36 [2004]). According to the statement, which had been redacted to remove references to defendant, Bianca and three other men went to the tavern earlier that evening and, following an altercation with other bar patrons, left together in Bianca's black Lexus. In the vehicle, there was "yelling back and forth" and discussion of obtaining a gun; Bianca allegedly told the others that he wanted nothing to do with such a plan, dropped off two of the men at their black car and then drove back to the tavern with the third man. As they approached the bar, a black vehicle allegedly came up behind Bianca's car. Bianca stated that he heard gunfire and attempted to drive away, but "somehow ended up back in the cross fire three more times before [he] took it upon [himself] to get [them] out of there."

A defendant's right to confront witnesses is violated by the admission of "the facially incriminating confession of a nontestifying codefendant" (*Richardson v Marsh*, 481 US 200, 207 [1987]; *see generally Bruton v United States*, 391 US 123, 135-136 [1968]); however, no such violation occurs where, as here, the codefendant's statement incriminates the defendant only in light of other evidence produced at trial (*see People v Pagan*, 87 AD3d 1181, 1184 [2011], *lv denied* 18 NY3d 885 [2012]; *People v Lewis*, 83 AD3d 1206, 1208-1209 [2011], *lv denied* 17 NY3d 797 [2011]). Nor did the use of plural pronouns such as "we" and "they" in the statement necessarily indicate any involvement by defendant, as the jury could have readily understood these as references to the other men that Bianca said were present (*see People v Pagan*, 87 AD3d at 1184-1185; *People v Timberlake*, 300 AD2d 219, 219-220 [2002], *lv denied* 99 NY2d 633 [2003]). Accordingly, the statement was admissible, and defendant's rights under the Confrontation Clause were not violated by the People's arguments that drew inferences about his participation by linking the statement with other trial evidence (*see People v Hernandez*, 89 AD3d 1123, 1126 [2011], *lv denied* 20 NY3d 1099 [2013]).

---

* Bianca was likewise convicted of several crimes, and this Court later upheld his convictions (*People v Bianca*, 91 AD3d 1127 [2012], *lv denied* 19 NY3d 862 [2012]).

Defendant's convictions were not against the weight of the evidence. Witnesses testified that defendant—wearing the aforesaid yellow hat—was present in the tavern on the night of the shooting with Bianca and three other men, all of whom left in a black Lexus after a dispute with other customers. About half an hour later, shots were fired from two cars, one of which, according to witnesses, was a black Lexus driven by Bianca that contained a shooter in a yellow hat. Witnesses saw gunfire flashes coming from the Lexus, and people on the sidewalk returned fire. Later that night, defendant and Bianca were stopped in a black Lexus driven by a third man; police did not find a weapon or other gun-related evidence in the Lexus, but did find body damage consistent with having been struck by gunfire, and the vehicle's paint matched paint chips found during forensic examination of the crime scene. Bianca later guided police to another vehicle that matched witness descriptions of the second car, had a 9 mm bullet lodged in the door and contained an unfired .40 caliber cartridge, a firearm cleaning rod and a storage space that, according to police, had been altered in a manner consistent with hiding a weapon. Multiple .40 caliber shell casings were found at the crime scene, distributed in a pattern consistent with having been fired from a moving vehicle or vehicles, and 9 mm shell casings were found near the tavern in a pattern suggesting that they had been fired from a stationary position.

Defendant points to various inconsistencies in the witness testimony, such as details about the yellow hat, whether the cars were parked or stationary during the incident and whether the occupants of the Lexus switched hats; he further relies on the absence of gun-related evidence in the Lexus, the presence of such evidence in the other vehicle and the fact that negative results were obtained in gunshot residue testing of his hands, Bianca's hands and those of the third occupant of the Lexus. However, there was testimony that such test results could have been affected by the movement of the vehicle from which the shots were allegedly fired and by the passage of time. Given the conflicts in the evidence, a different result would not have been unreasonable; nevertheless, according appropriate deference to the jury's credibility assessments after hearing the witness testimony and observing their demeanor, we do not find that its determination is against the weight of the evidence (*see People v Bianca*, 91 AD3d 1127, 1127-1128 [2012], *lv denied* 19 NY3d 862 [2012]; *People v Mann*, 63 AD3d 1372, 1373-1374 [2009], *lv denied* 13 NY3d 861 [2009]; *People v Lozada*, 35 AD3d 969, 970 [2006], *lv denied* 8 NY3d 947 [2007]).

Lahtinen, J.P., McCarthy and Egan Jr., JJ., concur. Ordered that the judgment is affirmed.